[No. 26818. Department Two. April 15, 1938.]

THE STATE OF WASHINGTON, *Respondent*, v. TUMWATER
LUMBER MILLS COMPANY, *Appellant*.[1]

*Thos. L. O'Leary* and *Geo. F. Yantis,* for appellant.

*The Attorney General* and *L. C. Brodbeck, Assistant,*
for respondent.

ROBINSON, J.—In relocating state highway No. 1 be-
tween Olympia and Tumwater, the state found it neces-

[1]Reported in 78 P. (2d) 160.

sary to take three irregular parcels of land belonging to the Tumwater Lumber Mills Company. The parties being unable to agree upon its value, the state brought this action to condemn. The jury awarded the defendant owner the sum of $2,950.

No question is raised as to instructions given or refused, but the defendant, as appellant here, seeks a new trial upon the ground that the award is grossly inadequate and contends that it reflects passion and prejudice, induced by improper comments and arguments on the part of the state's trial counsel.

After a map had been introduced and the location of the tracts clearly pointed out and explained by an engineer, the jury was taken to view the premises. When the jury returned into court, testimony as to values was taken. The state called three experts, and the defendant called three experts and the president of the owner corporation.

The plaintiff's witnesses valued tract one, as follows: Mr. Crooks, $1,000; Mr. Hunter, $1,100; Mr. Uhler, $1,800. The defendant's witnesses valued it as follows: Mr. Otis, $7,500; Mr. Sophy, $10,000; Mr. Berg, $8,500, and Mr. Anderson, president of the defendant owner, $11,000. Mr. Otis testified that he had tried several times to obtain the land for a service station and had been unable to buy it, and Mr. Anderson testified that he could rent it for that purpose at eighty dollars a month.

As to tract two, the plaintiff's witnesses testified to the following values: Mr. Crooks, $50; Mr. Hunter, $50; Mr. Uhler, $50. The defendant's witness, Mr. Otis, said that he had included it in the value given for tract one. Mr. Sophy and Mr. Berg did likewise. Mr. Anderson included it in his valuation of tract three.

As to tract three, the plaintiff's witnesses testified to the following values: Mr. Crooks, $700; Mr. Hunter,

$700; Mr. Uhler, $800. The defendant's witnesses valued this tract as follows: Mr. Otis, $1,200; Mr. Sophy, $1,200; Mr. Berg, from $1,000 to $1,200; Mr. Anderson, tracts two and three, $1,500.

A computation of the foregoing figures shows that the average values of the three tracts combined as given by plaintiff's witnesses is $2,083; and by defendant's witnesses is, $10,475. The jury found their value to be $2,950.

It clearly appears from the cross-examinations that this wide discrepancy between the value testified to by the plaintiff's and defendant's witnesses occurred because the plaintiff's witnesses thought tract three suitable for but one residence, while defendant's regarded it as large enough for two, and particularly because plaintiff's witnesses valued tract one as residence property, while defendant's witnesses valued it as business property. Relative to this, it must be remembered that the members of the jury heard defendant's witnesses give their reasons for valuing tract one as business property, and that they themselves visited the property, inspected it, and viewed its location and surroundings. The court gave the following instruction, the correctness of which is not questioned:

"I further instruct you that in arriving at your conclusion as to the value of the land taken, you may take into consideration any special purposes or uses to which the land taken or damaged can be put, or to which it is adaptable at the time of the trial, and that in so considering and arriving at your conclusion you may take into consideration the existing business or wants of the community where the property is situated or such business or wants as may be reasonably expected in the immediate future."

The court further instructed the jury, and no exception was taken, nor is any question now made as to form or substance:

"Witnesses have testified giving their opinion as to the values of the several properties. In the nature of things the market value of land is not a thing that can be definitely and certainly fixed, and it is for that reason that this opinion evidence is received. You are not, however, to receive passively or follow blindly the opinions of witnesses as to such values. The value of any such opinion depends largely upon whether the witness has or has not any interest in the result of the litigation, as well as upon the intelligence and the knowledge and experience he may possess as to values. *You are the sole judges of the value of any such opinion.*" (Italics ours.)

There can be no doubt but that it was for the jury to determine whether or not the land should be valued as residence property or as business property. It is equally clear that for this court to set aside the jury's verdict upon the ground of mere inadequacy of amount would be to make a mockery of the instruction last quoted, and particularly of the final sentence thereof.

On three several occasions during the examination of the defendant's witness Otis, counsel conducting the case for the plaintiff made comments to which the defendant objected, and in each case the court admonished counsel, and, in one instance, somewhat sternly. The trial judge was, of course, in an infinitely better position to determine whether or not any prejudice was engendered against the defendant by these comments than we can possibly be. His opinion regarding that matter is sufficiently indicated by the fact that he refused to grant a new trial, and we see nothing in the circumstances which would warrant us in holding that this was error.

Even more vigorous complaint is made concerning expressions said to have been used by plaintiff's counsel in his argument to the jury. These, it is said in the briefs, were called to the court's attention

by affidavits filed during the pendency of the motion for new trial. There are some affidavits in the transcript, but they are not incorporated in the motion for a new trial and have not been certified or brought up in the statement of facts; and therefore, under the rule which has been so frequently and repeatedly called to the attention of the bar, they cannot be considered.

■ Finally, it is contended that the difference between the value testified to by defendant's witnesses and the verdict returned is so startling as to necessitate the unavoidable inference that the jury was swayed by passion and prejudice. But does that follow? The average of the value testified to by defendant's witnesses for all three tracts was $10,475, the verdict was $2,950, the difference is $7,525. But the average of the values given by defendant's witnesses as to tract one, valuing it as business property, was $9,250, by the plaintiff's witnesses, valuing it as residence property, $1,300. The difference is $7,950. Is it not at least a reasonable inference that the jury may have found tract one to be residence property? If so, that would more than account for the difference upon which the contention is based.

The judgment appealed from is affirmed.

STEINERT, C. J., BEALS, BLAKE, and MILLARD, JJ., concur.